# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LANA E. MARCUSSEN,

       Plaintiff,

vs.                                                                    No. CIV 04-1429  JB/DJS

MICHAEL O. LEAVITT, the Secretary of Health
and Human Services in his official and personal
capacity; GALE NORTON, the Secretary of the
Department of the Interior in her official and personal
capacity; JOHN DOES 1-20, in their official and
personal capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion to Dismiss Filed in

Lieu of an Answer by Federal Defendants HHS and DOI, and Memorandum in Support, filed

February 25, 2005 (Doc. 5); (ii) the Defendants' Motion for Court to Direct Plaintiff Not to

Communicate with Represented Parties, filed October 21, 2005 (Doc. 35); and (iii) the Plaintiff Lana

E. Marcussen's Motion and Memorandum for Order to Show Cause or in the Alternative Require

the Production of the Administrative Record, filed December 2, 2005 (Doc. 40).  The Court held

hearings on the Defendants' Motion to Dismiss on May 24 and August 26, 2005.  The primary issues

are: (i) whether the Court should dismiss this case based on the affidavits filed by the Defendants

stating that they do not possess the documents requested by Marcussen under the Freedom of

Information Act ("FOIA"); (ii) whether the Court should order Marcussen not to communicate with

represented parties; and (iii) whether the Court should hold Secretary of the Interior Gale Norton in

contempt of court or, in the alternative, whether the Court should require Secretary Norton to order

the Bureau of Indian Affairs ("BIA") to produce the administrative record under the Administrative

Procedure Act ("APA"). Because the Defendants have demonstrated that they made a reasonable

search and could not find any documents, thereby mooting Marcussen's FOIA claim, the Court will

grant the Defendants' Motion to Dismiss. Further, the Court will deny the Defendants' motion to

order Marcussen not to communicate with represented parties and Marcussen's Motion to Show

Cause as moot in light of the Court's ruling on the Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND

In October 1991, Marcussen filed for divorce from her husband in New Mexico State District

Court. See Complaint ¶ 17, at 4 (Doc. 1). Marcussen and her husband entered into a Marital

Settlement Agreement ("MSA") that dissolved the marriage and awarded primary custody of the

couple's child to Marcussen. See id. ¶¶ 21-22, at 5. Subsequently, the judge overseeing the divorce

proceeding, the Honorable Anne Kass, New Mexico state district judge, appointed a guardian ad

litem for the child and granted the guardian's motion to temporarily change the custody provisions

of the MSA pending a psychological evaluation of Marcussen. See id. ¶¶ 24, 43-44, at 5, 7-8. After

a psychological evaluation and a trial on the issue of custody, Judge Kass awarded custody to the

child's father and imposed child support obligations on Marcussen. See id. ¶¶ 45-82, at 8-12.

According to Marcussen, Judge Kass also authorized the placement of $190,000 in liens against her.

See id.¶ 57, at 9.

After an evaluation by the Albuquerque Public Schools detected behavioral problems in

Marcussen's child, allegedly stemming from the father's custody over the child, Marcussen filed a

motion to change custody in October 1996. See id. ¶¶ 97-102, at 14-15. Following a hearing on

Marcussen's motion, Judge Kass issued an order stating that she would not consider Marcussen's

motion until Marcussen complied with Judge Kass' prior orders.  See id. ¶ 113, at 16.  The order also sharply curtailed Marcussen's visitation rights.  See id. ¶ 114, at 16.  Outraged by the new order, Marcussen filed a complaint with the New Mexico Judicial Standards Commission.  See id. ¶ 115, at 16.

In November 1998, Marcussen received a motion for order to show cause why she should not be held in contempt for non-payment of child support.  See id. ¶ 121, at 17.  The New Mexico Child Support Enforcement Division ("NMCSED") agreed to accept $100 per month in child support payments at a hearing held in January 1999.  See id. ¶¶ 123-33, at 17-19.

NMCSED informed Marcussen, in December 1999, that it would ask the Supreme Court of New Mexico to suspend her law license for non-compliance with the first child support order.  See id. ¶¶ 151-152, at 21-22.  On that basis, the Supreme Court suspended her license to practice law the following March, and she was prevented from re-taking the Arizona Bar Exam.  See id. ¶¶ 155-57, at 22.  After the suspension, the Supreme Court held a hearing in which the Justices explained that her suspension was automatic once the NMCSED filed a notice of non-compliance and that the Supreme Court lacked jurisdiction to consider the federal constitutional issues allegedly raised by the proceedings before Judge Kass.  See id. ¶¶ 158-64, at 22-23.  In April 2004, the Supreme Court denied Marcussen's motion to hear "the constitutional issues surrounding her license suspension." Id. ¶ 183, at 26.  Marcussen alleges that this history of legal action shows that "the state courts and NMCSED administrators have prevented [her] from challenging the harm being inflicted on her while enforcing the federal mandates suspending her license to practice law, prevent her from renewing her passport and prevent her from taking the Arizona Bar Exam." Id. ¶ 186, at 26-27.

On July 19, 2004, Marcussen submitted two FOIA requests.  She sent one request to the

United States Department of Health and Human Services ("HHS"), which requested

> any and all indexes, final orders, opinions, statements of policy, interpretations, staff manuals or instructions and correspondence regarding any and all plans (proposed and/or accepted) submitted by the State of New Mexico for each year since 1991 for the Temporary Assistance to Needy Families program (formerly Aid to Families with Dependent Children) and the Indian Child Welfare Act.

Letter from Lana Marcussen to the United States Department of Health and Human Services ("HHS Request") at 1 (executed July 19, 2004). Marcussen also lodged a request with the United States Department of the Interior ("DOI"), asking for

> any and all indexes, final orders, opinions, statements of policy, interpretations, staff manuals or instructions and correspondence made between any two or more of the following agencies, the Department of Interior, State of New Mexico, Department of Health and Human Services and the Navajo Nation Indian tribe regarding any and all plans (proposed and/or accepted) submitted by the State of New Mexico for each year since 1991 for the Temporary Assistance to Needy Families Act (formerly Aid to Families with Dependent Children) and/or the Indian Child Welfare Act.

Letter from Lana Marcussen to the United States Department of the Interior ("DOI Request") at 1 (executed July 19, 2004). HHS replied to the FOIA request sent to it by mailing a total of 625 pages worth of documents to Marcussen on August 23 and October 20, 2004. See Letter from Rosario Cirrincione, Director, FOI/Privacy Acts Division, Office of Public Affairs, to Lana Marcussen at 1 (executed August 23, 2004); Letter from Rosario Cirrincione, Director, FOI/Privacy Acts Division, Office of Public Affairs, to Lana Marcussen at 1 (executed October 20, 2004).

## **PROCEDURAL BACKGROUND**

On December 27, 2004, Marcussen filed suit against the Defendants in the United States District Court for the District of New Mexico. She alleges that the approval by the HHS Secretary of New Mexico's plan for receiving Medicare funds, and the approval by the Secretary of the Interior of joint power agreements entered into by New Mexico and certain Indian tribes, led to the violation

of her constitutional rights in the child custody proceedings.  <u>See</u> Complaint ¶¶ 248-53, 268, 271-72, at 35-36, 38-39.  The injuries she has allegedly suffered include the suspension of her driver's license and her law license, and the denial of her right to travel because of the confiscation of her passport.  <u>See</u> <u>id.</u> ¶ 272, at 39.  In her prayer for relief, Marcussen requests that the Court: (i) order HHS and DOI to produce the administrative record of the approval of the New Mexico state plan and the joint power agreements; (ii) declare unlawful, and set aside federal approval of, the New Mexico state plan; (iii) "reserve" other potential claims pending the production of the administrative record; and (iv) "reserve" potential claims on behalf of her son.  <u>Id.</u> ¶¶ 1-10, at 39-41.

On February 25, 2005, the Defendants filed a Motion to Dismiss under rules 12(b)(1), 12(b)(6), and 8(c), of the Federal Rules of Civil Procedure.  <u>See</u> Motion to Dismiss Filed in Lieu of an Answer by Federal Defendants HHS and DOI, and Memorandum in Support ("Motion to Dismiss") at 1.  First, the Defendants contend that sovereign immunity bars Marcussen's claims.  <u>See</u> <u>id.</u> at 10-11.  The Defendants maintain that none of the statutes cited by Marcussen in her Complaint -- Temporary Assistance to Needy Families ("TANF"), the APA, and FOIA -- give the Court jurisdiction over this case.  <u>See</u> <u>id.</u> at 11-17.  Second, the Defendants argue that Marcussen has not presented a case or controversy under Article III of the United States Constitution because she has not identified any concrete harm that the Defendants inflicted on her, as opposed to injury she may have suffered because of the rulings of the New Mexico state courts, and she essentially asks the Court to issue an advisory opinion on the legality of New Mexico's welfare programs.  <u>See</u> <u>id.</u> at 17-20.  Third, the Defendants allege that Marcussen lacks constitutional and prudential standing.  <u>See</u> <u>id.</u> at 20-23.  Fourth, the Defendants urge the Court to forego jurisdiction in this case because it involves the field of "domestic relations," which is best left to the states.  <u>See</u> <u>id.</u> at 23-24.  Finally,

the Defendants request that the Court dismiss Marcussen's action because the APA's statute of limitations and principles of res judicata and collateral estoppel bar the suit.  See id. at 24-26.

Marcussen filed a response on April 11, 2005.  Marcussen began by making clear that her Complaint "is only a FOIA/APA and declaratory judgment claim at this time," and that she is reserving her civil rights claims until she learns the bases for the decisions by the New Mexico state courts against her.  Response to Motion to Dismiss ("Response") at 3, filed April 11, 2005 (Doc. 17).  She submitted her FOIA requests to discover the law and policies underlying the rulings in the New Mexico state courts.  See id.  Gaining access to these documents will allegedly allow her to understand the source of the purported violation of her right to due process.  See id. at 6-7.  Without access to these documents, Marcussen explains that she will be unable to pursue her civil rights claims.  See id. at  6.  Furthermore, Marcussen maintains that, if the Defendants do not produce the requested documents, then she can sue under the APA.  See id. at 7.  Marcussen also states that she is asking the Court, under the Declaratory Judgment Act, to declare that the Defendants exceeded their authority in approving the Model Tribal-State Indian Child Welfare Agreement.  See id. at 9.  Marcussen assures the Court that "she will not amend the Complaint to expand the [C]omplaint beyond these claims until the requested documents are produced, unless required to do so by this Court."  Id.

Moreover, Marcussen contends that FOIA provides jurisdiction for this suit, even though the Defendants argue that she has not exhausted her administrative remedies on her HHS request, because she can still file an administrative appeal while her FOIA request is pending.  See id. at 11.  As for her DOI request, Marcussen alleges that DOI's failure to respond to her FOIA request exhausts her administrative remedies.  See id. at 11-12.  Marcussen also asserts her belief that DOI

has the requested documents and that they are located in New Mexico.  See id. at 12.

Marcussen affirms that she has constitutional and prudential standing.  See id. at 13-14.  In addition, Marcussen suggests that the domestic relations exception does not apply to this case because the Court's ruling will not directly affect any current state court proceedings.  See id. at 15. Marcussen explains that, at most, she will use the documents she receives from this case and use them in state court proceedings.  See id. at 15-16.  As Marcussen states: "This case will only produce documents and possibly an administrative record.  Either way, nothing happens to the domestic relations case without [Marcussen] taking further action in that case."  Id. at 15.  Finally, Marcussen asserts that the statute of limitations has not run because she brought her action under FOIA and the statute did not begin to run before 2004, and that res judicata and collateral estoppel do not apply. See id. at 16-17.

In their Reply, the Defendants represent their belief that Marcussen has narrowed her Complaint to a FOIA action, rendering any other possible basis of jurisdiction as "not properly before this Court."  Reply by Defendants DOI and HHS to Plaintiff's Response to Motion to Dismiss Filed in Lieu of an Answer at 1-3, filed May 20, 2005 (Doc. 21).  HHS contends that the Court should dismiss it from the case because it has provided all responsive documents and Marcussen has not exhausted her administrative remedies in light of her failure to further appeal HHS's FOIA response. See id. at 6.  The Defendants further maintain that DOI has no records that fall under Marcussen's FOIA request and that the Court, therefore, lacks jurisdiction.  See id. at 8-9.

At the hearing on May 24, 2005, Marcussen clarified that her Complaint states a cause of

action only under FOIA and the APA.  See Transcript of Hearing at 3:19-23 (taken May 24, 2005).[1]

Marcussen outlined the three documents which she seeks to obtain: (i) New Mexico's Aid to Families

with Dependent Children (AFDC) state plans from 1992-96; (ii) the Model Tribal-State Indian Child

Welfare Agreement; and (iii) a contract entered into by the Navajo Nation under the Indian Self-

Determination Act.  See id. at 16:2-8, 17:12-17.  Marcussen informed the Court that, if the

Defendants refused to produce the requested documents, then she could proceed on her APA claim

and compel the production of the administrative record.  See id. at 18:5-12.  Marcussen stated that

the records would have to be in Albuquerque because of how AFDC was administered.  See id. at

30:21-31:3.

　　　　The Defendants told the Court that both departments have given Marcussen all the documents

that they possess that come within the ambit of her FOIA request and, consequently, the Court should

dismiss with prejudice her FOIA claim.  See id. at 11:18-12:14.  The Defendants stated that dismissal

might be in the form of a summary judgment because of the introduction of documents outside of the

pleadings.  See id. at 8:12-9:4.  In the alternative, the Defendants argued that the Court did not have

subject matter jurisdiction because Marcussen does not live in the District of New Mexico and the

agency records, if they exist, are not located in New Mexico.  See id. at 26:7-21.

　　　　On June 23, 2005, the parties jointly submitted a motion to vacate the Initial Scheduling Order

and stay the action for at least sixty days.  See Joint Motion to Vacate Initial Scheduling order and

Stay the Action, filed June 23, 2005 (Doc. 26).  The parties explained that, since the May hearing,

HHS located the AFDC state plans for New Mexico from 1992-1996 in Dallas.  See id. at 1.

--------

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Following a conference call between the parties on June 20, 2005, the parties came to an understanding that Marcussen was only seeking three categories of documents from HHS: (i) "[a]ll agreements or contracts between the State of New Mexico and the Navajo Nation for Title IV-D and Title IV-E for 1992 to 1996"; (ii) "ISDA 638 or other contracts between HHS and the Navajo Nation for Title IV-D and IV-E for 1992 to 1996"; and (iii) "[t]ransitional documents for Title IV-E and IV-D transitioning from AFDC to TANF." Id. at 2-3.  HHS estimated that it would require at least sixty days to find these documents. See id. at 3.  The Court granted the parties' request, but also required the parties to "submit a report or letter to the Court by August 24, 2005, giving the status of the matter." Stipulated Order Vacating Initial Scheduling Order (Doc. No. 25) and Staying the Case, filed  June 28, 2005 (Doc. 27).

The parties submitted separate letters to the Court in August 2005 updating the Court on the progress of the case.  In their letter, the Defendants explained that only HHS, not DOI, would have any documents relating to Marcussen's request. See Letter from David Iglesias and Cynthia Weisman to Judge Browning at 3, filed August 25, 2005.  The Defendants told the Court that HHS found one potentially responsive document and would send that document to Marcussen. See id. at 1.  HHS informed the Court that it had exhausted its search and found no other responsive documents, and that HHS, rather than DOI, would be the only department to possess such documents. See id. Without anything more to produce, the Defendants argued that the case should be dismissed. See id. at 4.

In her letter, Marcussen stated: "The only documents not provided by the [HHS] and [DOI] are the [AFDC] Title IV-D and Title IV-E agreements and ISDA 638 contract(s) with the Navajo Nation." Letter from Lana E. Marcussen to Judge Browning at 1, filed August 25, 2005.  Also,

Marcussen conceded that "there is no reason to believe that HHS would be the federal agency that would have copies of these AFDC Title IV-D and Title IV-E agreements or ISDA contracts with the Navajo Nation. The only federal department that was required to take action on these Navajo Nation agreements was the Department of the Interior." Id. at 2. She also accepted "the representations of the U.S. Attorney that [HHS has] searched [its] records and provided the documents [it] possess[es]. Id. Marcussen expressed her belief, however, that DOI was still withholding documents covered by her FOIA request. See id. at 2-3. She also reiterated that, "[a]s promised, I will not amend the Complaint to invoke civil rights claims that include New Mexico state defendants until this Court approves. This case remains only a request for the production of the requested documents. If the case is dismissed, it will force me to file a new civil rights action with an APA claim." Id. at 3.

After receiving the two letters, the Court held a second hearing on August 26, 2005. Neither party disagreed with the Court's conclusions that: (i) the only two documents that Marcussen believes she still lacks are the Title IV-D and Title IV-E agreements, and the ISDA contracts; and (ii) the parties agree that HHS does not have these documents. See Transcript of Hearing at 3:14-4:2 (taken August 26, 2005). The Court stated its belief that DOI had not "flatly represented that it does not have the documents." Id. at 3:23-4:2. The Court proposed allowing DOI to file a pleading stating that it had made "a diligent search" but had no documents in its possession; after the Court received this document, the Court would then grant the Defendants' Motion to Dismiss. See id. at 4:3-11. In response, Marcussen said that the Court's plan "doesn't bother me." Id. at 4:14-15. Marcussen explained that she understood

> the position [of the Court] in terms of the [FOIA] requests that if the Department of Interior says they don't have the documents, that you either[,] I mean, the Court either makes a finding that you think they do have them and are withholding them, at

which point it scales up from [FOIA] to an APA claim as stated in my letter, or the case is dismissed and I come back and I file the full APA claim and the civil rights action.

Id. at 4:19-5:1.

The Defendants explained that their efforts had been concentrated on HHS because only that department, and not DOI, would have such documents. See id. at 5:20-8:1. The Defendants agreed to file a document saying that DOI had made a good faith effort to locate the two remaining categories of documents approved by the United States from 1992-1996 -- the Title IV-D and Title IV-E agreements, and the ISDA contracts -- but was unable to find them, and the Court announced that it would dismiss the case after receiving such a filing. See id. at 8:2-25, 19:17-20:5, 20:22-21:8. Marcussen said she did not have a problem with this approach so long as the dismissal of the case did not prejudice her potential civil rights claims. See id. at 9:1-6. She affirmed that the dismissal of her FOIA case with prejudice would not bar her from filing a civil rights claim later. See id. at 10:14-22. Marcussen agreed that the FOIA claim is the only one presently before the Court and that the FOIA claim would be the only thing the Court would address in its final judgment. See id. at 11:14-20.

The Defendants submitted six statements by various officials in the BIA.  Five of the statements state that the officials are not aware of any agreements between the Navajo Nation and the State of New Mexico in the possession, custody, or control of the BIA. See  Declaration of Jeff Sena ¶¶ 3-4, at 1-2 (executed September 22, 2005)(hereinafter "Sena Decl."); Declaration of Vivian Yazza ¶ 3, at 1 (executed October 7, 2005)(hereinafter "Yazza Decl."); Declaration of Evelyn Roanhorse ¶ 3, at 1 (executed October 19, 2005)(hereinafter "Roanhorse Decl."); Declaration of Tim DeAsis ¶ 3, at 1 (executed October 18, 2005)(hereinafter "DeAsis Decl."); Declaration of Sandra McCook ¶ 3, at 1 (executed November 25, 2005)(hereinafter "McCook Decl."). Another declaration

states that the official, Sharon Pinto, the Indian Self Determination Officer for the BIA in Gallup, New Mexico, found no ISDA 638 contracts after conducting a search.  <u>See</u> Declaration of Sharon Pinto ¶ 3, at 1-2 (executed September 22, 2005)(hereinafter "Pinto Decl.").

On October 17, Marcussen sent an email to James Cason, Associate Deputy Secretary of the Interior, asking for the Title IV-D and Title IV-E agreements that she has requested in her FOIA action.  <u>See</u> Email from Lana Marcussen to James Cason, Associate Deputy Secretary of the Interior, at 1 (sent October 17, 2005).  On October 21, 2005, the Defendants filed a Motion for Court to Direct Plaintiff Not to Communicate with Represented Parties ("Motion to Direct Plaintiff Not to Communicate").  In their Motion, the Defendants ask the Court to direct Marcussen not to communicate directly with the Defendants.  <u>See</u> Motion to Direct Plaintiff Not to Communicate at 1.

On December 2, 2005, Marcussen filed a Motion for Order to Show Cause or in the Alternative Require the Production of the Administrative Record ("Motion to Show Cause").  Marcussen argued that Secretary Norton should be held in contempt of court because the BIA's affidavits came from people "with no connection to the requested records."  Motion to Show Cause at 1-2.  In the alternative, Marcussen requests that the Court order Secretary Norton to order the BIA to produce the administrative record, "including all correspondence between HHS, the Navajo Nation and any agency of the State of New Mexico for the Indian Child Welfare Act, Title IV-D and Title IV-E programs administered by the Navajo Nation from 1991-1996, within 60 days of this Court's order as requested by the Complaint for non-compliance with FOIA."  <u>Id.</u> at 2.  She considers production of the administrative record to be "sufficient punishment for non-compliance to FOIA."  <u>Id.</u>  Marcussen also requests leave to amend her Complaint to allege civil rights causes of action "to

strengthen the FOIA and APA claims." Id. at 4.  She explains that she now has "sufficient information to now articulate specific allegations and civil rights causes of action against the federal defendants and potential state defendants." Id.

## RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a claim for "lack of jurisdiction over the subject matter."  There are two types of rule 12(b)(1) motions: facial and factual attacks on jurisdiction.  See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995).  "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." Id. (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)).

> A factual attack occurs when a party goes
>
> beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1003 (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d at 325, and Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  A district court must treat a rule 12(b)(1) motion as a Motion to Dismiss under rule 12(b)(6) or for summary judgment under rule 56 "when resolution of the jurisdictional question is intertwined with the merits of the case.  The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." Id. (citing Wheeler v. Hurdman, 825 F.2d

-13-

at 259, and <u>Redmon v. United States</u>, 934 F.2d 1151, 1155 (10th Cir. 1991)).

Normally, to avoid unfair surprise, the district court must give the parties notice before converting a rule 12(b)(1) motion into a summary judgment motion.  <u>See</u> <u>Wheeler v. Hurdman</u>, 825 F.2d at 259.  There is no unfair surprise, however, when a district court converts a Motion to Dismiss into one for summary judgment after both parties have submitted material beyond the pleadings.  <u>See</u> <u>id.</u> at 260.  The United States Court of Appeals for the Tenth Circuit has held that, "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion."  <u>Id.</u> (citing <u>Nichols v. United States</u>, 796 F.2d 361, 364 (10th Cir. 1986)).

## FOIA

The FOIA "generally provides that the public has a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions."  <u>Anderson v. Health & Human Servs.</u>, 907 F.2d 936, 941 (10th Cir. 1990)(citing 5 U.S.C. § 552).  The FOIA's purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.  To achieve that goal, the FOIA is designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  <u>Id.</u> (internal quotations and citations omitted).  Under 5 U.S.C. § 552(a)(4)(B),

> [o]n complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

## STANDARD FOR SUMMARY JUDGMENT IN FOIA CASES

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. See id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The Court may only consider admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

As the Supreme Court of the United States has explained, "[t]he FOIA confers jurisdiction on the district courts to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld." United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989). A federal district court will only have jurisdiction in a suit under FOIA when "an agency has (1) improperly (2) withheld (3) agency records." Id. (internal quotations omitted)(quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)). The agency has the burden "to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." Id. at 150 n.3 (internal quotations and

-15-

citations omitted).  "Once the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot."  Anderson v. United States Dep't of Health & Human Servs., 3 F.3d 1383, 1384 (10th Cir. 1993)(citations omitted).  See also Walsh v. United States Dep't of Veterans Affairs, 400 F.3d 535, 536 (7th Cir. 2005)("In general, 'once the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot.'" (citations omitted)); Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982)(per curiam)("We would simply note at this juncture that, however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

In a series of unpublished decisions, the Tenth Circuit has given the "well established" standard for granting summary judgment "in favor of an agency that claims it has fully discharged its FOIA disclosure obligations."  Liverman v. Office of the Inspector Gen., 139 Fed. Appx. 942, 944 (10th Cir. July 14, 2005)(internal quotations omitted)(quoting Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)).[2]  To grant summary judgment, "[t]he agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact. To meet this burden, the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  Id. (internal quotations and citations omitted).  The Court must judge the adequacy of the search "by a standard of reasonableness" depending on the facts of the case before it.  Id.  (internal quotations and citations omitted).  "In demonstrating the

---

[2] The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria, and the rules therefore allow citation to this unpublished decision.

adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." Id. (internal quotations and citations omitted).    Once the agency has carried its burden, "[t]he burden then shifts to the nonmoving party who must provide either evidence to contradict the moving party or evidence of bad faith." Schwarz v. Nat'l Archives & Records Admin., No. 98-4070, 1998 U.S. App. LEXIS 24885, at *4 (10th Cir. October 7, 1998)(citation omitted).  "Unsupported allegations are not enough to satisfy this burden." Id. (citation omitted).

## ANALYSIS

The Court will treat the Defendants' Motion to Dismiss as a motion for summary judgment, and grant the motion because there are no genuine issues of material fact between the parties.  The Court will deny the Defendants' Motion to Direct Plaintiff Not to Communicate because it is moot following the Court's ruling on the Defendants' Motion to Dismiss.  Finally, the Court will deny Marcussen's Motion to Show Cause because it is moot in light of the Court's ruling on the Defendants' Motion to Dismiss.

## I.    THE COURT WILL GRANT THE DEFENDANTS' MOTION TO DISMISS.

The Court will treat the Defendants' Motion to Dismiss as a motion for summary judgment because the Defendants' motion is a factual attack on jurisdiction that is intertwined with the merits of the case.  The Court will grant the Defendants' motion because there is no genuine issue that the Defendants have produced all documents in their possession that are responsive to Marcussen's FOIA request.

-17-

**A.      THE DEFENDANTS' MOTION TO DISMISS SHOULD BE CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT.**

At the outset, the Court must decide whether it should treat the Defendants' motion as one to dismiss under rule 12(b)(1) or one for summary judgment under rule 56. The Tenth Circuit has instructed that a rule 12(b)(1) motion to dismiss launching only a facial attack on the plaintiff's complaint should remain a motion to dismiss. See Holt v. United States, 46 F.3d at 1002. Furthermore, a factual attack, challenging the facts upon which subject matter jurisdiction depends, normally remains a motion to dismiss. See id. at 1003. When resolution of the jurisdictional question is intertwined with the merits of the case, however, the Court must treat the rule 12(b)(1) motion as either a rule 12(b)(6) motion or a rule 56 summary judgment motion. See id. The merits of the case and the jurisdictional issue are intertwined "if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." Id. (citations omitted).

The Defendants' motion asks the Court to dismiss Marcussen's case under rule 12(b)(1) for lack of jurisdiction. Specifically, the Defendants assert that the Court does not have jurisdiction over Marcussen's action because the Defendants have produced all of the documents that they possess which fall under Marcussen's FOIA request. See Motion to Dismiss at 16-17. According to the Defendants, Marcussen's claim is therefore moot and should be dismissed. See id. at 17.

The Defendants' motion is a factual, as opposed to facial, attack on jurisdiction. The Defendants' motion is not a facial attack because they are not challenging the sufficiency of Marcussen's Complaint to invoke federal jurisdiction. See Holt v. United States, 46 F.3d at 1002. See generally Motion to Dismiss. The Defendants do not argue that, even if the Court accepts every fact in the Complaint as true, the Complaint still fails to present a proper basis for federal jurisdiction.

See generally id.  Instead, the Defendants have launched a factual attack because they have gone beyond the allegations establishing jurisdiction in Marcussen's Complaint -- namely, that the Defendants have improperly withheld documents from her in violation of the FOIA -- to assert that the Defendants have not withheld anything from her.  See Holt v. United States, 46 F.3d at 1003; Motion to Dismiss at 17.  The Defendants have thereby challenged, rather than assumed as true, one of the facts underpinning the Court's jurisdiction in this matter.

Even though the Defendants' motion is a factual attack, the Court may treat it as a rule 12(b)(1) motion unless the jurisdictional question is intertwined with the merits.  See Holt v. United States, 46 F.3d at 1003.  The Defendants' challenge to the Court's subject matter jurisdiction here is inextricably tied to the merits of Marcussen's FOIA action.  To decide whether the case is moot, the Court must determine whether the Defendants are withholding any documents from Marcussen; to decide Marcussen's case on the merits, the Court must also determine whether the Defendants are withholding any documents from Marcussen.  See 5 U.S.C. § 552(a)(4)(B).  Also, the same statute -- 5 U.S.C. § 552(a)(4)(B) -- resolves the jurisdictional issue raised by the Defendants and by the merits of Marcussen's claim.  Because the two issues are intertwined, the Court must treat the Defendants' rule 12(b)(1) motion as either a motion to dismiss under rule 12(b)(6) or a motion for summary judgment under rule 56.

The Court will treat the Defendants' motion as one for summary judgment because the parties have submitted materials beyond the pleadings either in support of, or in response to, the Defendants' motion.  The Defendants have submitted numerous affidavits by officials in the federal government denying that their respective agencies possess the requested documents, along with copies of Marcussen's FOIA requests.  In addition, Marcussen attached an affidavit to her Response outlining

-19-

her correspondence with the Defendants concerning her FOIA requests.  See generally Affidavit of Lana E. Marcussen (executed April 7, 2005)(hereinafter "Marcussen Aff.").

Rule 12(b) requires that a rule 12(b)(6) motion must be converted by the Court into a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the court."  The Tenth Circuit has explained the rationale behind this rule:  "A motion to dismiss considers the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence (or lack thereof) upon which the allegations are based."  Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253 (10th Cir. 2005)(citing Bell v. Fur Breeders Agric. Coop., 348 F.3d 1224, 1230 (10th Cir. 2003)).  Because the Court will rely on papers outside the Complaint filed by the parties, the Court should treat the Defendants' motion as one for summary judgment, not as one to dismiss under rule 12(b)(6).

In the normal course, the Court would give formal notice of its intent to convert a motion to dismiss into a summary judgment motion.  Indeed, the Tenth Circuit usually requires that the court inform parties before conversion to avoid unfair surprise.  See Wheeler v. Hurdman, 825 F.2d at 259.  According to the Tenth Circuit, however, a party is on notice of possible conversion when that party has filed material beyond the pleadings in support of or opposing a motion to dismiss.  See id. at 260.

In this case, both parties were on notice of possible conversion because each party filed material in addition to the pleadings regarding the Motion to Dismiss.  As explained above, the Defendants filed numerous affidavits executed by various government officials in addition to their Motion to Dismiss and Reply.  Also, Marcussen attached an affidavit to her Response.  Neither party, therefore, can complain of unfair surprise when the Court considers the materials that each party has submitted in support of or opposition to the Motion to Dismiss, and uses the proper procedural

mechanism -- summary judgment under rule 56 -- to evaluate these materials.  Indeed, the Court and the Defendants discussed possible conversion without any objection from either party.  See Transcript of Hearing at 8:19-9:4 (taken May 24, 2005).  From the start, the parties were on notice that the Court could employ the conversion process provided in rule 12(b) that governs the presentation of outside materials in support of or in opposition to a motion to dismiss.

Moreover, at the hearing on August 26, 2005, the Court proposed that the DOI file a pleading stating it had made a diligent search but had no documents in its possession.  See Transcript of Hearing at 3:14-4:11 (taken August 26, 2005).  That would be a document outside the pleadings.  The Court proposed that, after it received such a document, the Court would consider it and, if it said what the Defendants said it would say, the Court would grant the motion.  See id.  Marcussen indicated that the Court's proposal did not bother her.  See id. at 4:14-15.  Given the parties' agreement on how to proceed, the parties cannot now assert unfair surprise.

### B.   THERE IS NO GENUINE ISSUE OF FACT THAT THE DEFENDANTS ARE NOT WITHHOLDING DOCUMENTS FROM MARCUSSEN.

To prevail on summary judgment, the Defendants must demonstrate that they have conducted a search reasonably calculated to uncover all relevant documents.  See Liverman v. Office of the Inspector Gen., 139 Fed. Appx. at  944.  The Defendants' search must be reasonable and may be supported by reasonably detailed, nonconclusory affidavits submitted in good faith.  See id.  Once the Defendant makes this showing, Marcussen must then provide evidence, not unsupported allegations, that either contradicts the Defendants or establishes their bad faith.  See Schwarz v. Nat'l Archives & Records Admin., 1998 U.S. App. LEXIS 24885, at *4.

The parties agree that HHS does not have any documents, as yet unproduced, that are

responsive to Marcussen's FOIA request.  The parties narrowed the categories of documents that allegedly remain outstanding as "the [AFDC] Title IV-D and Title IV-E agreements and ISDA 638 contract(s) with the Navajo Nation."  Letter from Lana E. Marcussen to Judge Browning at 1.  The Defendants stated in a letter to the Court that "DHHS has no documents for Plaintiff."  Letter from David Iglesias and Cynthia Weisman to Judge Browning at 2.  In Marcussen's August 24, 2005, letter to the Court, she stated that "there is no reason to believe that HHS would be the federal agency that would have copies of these AFDC Title IV-D and Title IV-E agreements or ISDA contracts with the Navajo Nation.  The only federal department that was required to take action on these Navajo Nation agreements was the Department of the Interior."  Letter from Lana E. Marcussen to Judge Browning at 2.  No genuine issue, therefore, exists regarding Marcussen's claim against HHS because the parties agree that HHS has no responsive documents.  As the parties agreed at the August 26 hearing, the only potential point of contention between the parties is whether DOI is withholding these two classes of documents.  See Transcript of Hearing at 3:14-4:2 (taken August 26, 2005).

The Defendants have carried their burden of showing that DOI has not improperly withheld documents from Marcussen.  The Defendants have submitted six affidavits by various officials in the BIA.  Five of those affidavits state that the officials are not aware of any Title IV-D or Title IV-E agreements between the Navajo Nation and the State of New Mexico in the BIA's possession, custody, or control.  See Sena Decl. ¶¶ 3-4, at 1-2; Yazza Decl. ¶ 3, at 1; Roanhorse Decl. ¶ 3, at 1; DeAsis Decl. ¶ 3, at 1; McCook Decl. ¶ 3, at 1.  Pinto's declaration also denies that the BIA's records contain any ISDA 638 contracts.  See Pinto Decl. ¶ 3, at 1-2.

Furthermore, the affidavits demonstrate that the affiants have conducted searches reasonably calculated to uncover Marcussen's requested documents.  For instance, Jeff Sena, the Contracting

Officer for the Division of Acquisition, Navajo Region, in the BIA's Gallup Office, declared that he searched "the files and records retained by my office, including the Requisition Log maintained by my office, and have determined that the requested records are not in the control, custody or possession of the BIA." Sena Decl. ¶¶ 1, 4, at 1-2. Also, Tim DeAsis, the Deputy Regional Director, Indian Services, Navajo Region, in the BIA's Gallup Office, explained that he forwarded a fax from Marcussen concerning the documents to the Navajo Regional Social Worker to determine if they had the documents. See DeAsis Decl. ¶ 4, at 1. Vivian Yazza, Regional Social Worker for the BIA, Navajo Region, in the BIA's Gallup office, Evelyn Roanhorse, Regional Social Worker for the BIA, Western Region, in the BIA's Phoenix Office, and Sandra McCook, the Supervisory Social Worker for the BIA, Southwest Region, in Albuquerque, stated that their offices do not have any copies of any such agreements. See Yazza Decl. ¶ 3, at 1; Roanhorse Decl. ¶ 3, at 1; McCook Decl. ¶ 3, at 1-2. Finally, Pinto stated that she searched her records for any ISDA 638 contracts and found none. See Pinto Decl. ¶ 3, at 1-2.

By describing reasonable searches that were reasonably calculated to discover the documents, and by affirming that DOI has no such documents, the Defendants have shown that there is no genuine issue of material fact. In response, Marcussen has not shown that the Defendants possess the documents or are acting in bad faith. In fact, at the August 26 hearing, Marcussen agreed that these filings would dispose of this case. See Transcript of Hearing at 4:14-15, 9:1-6 (taken August 26, 2005). Far from disputing the absence of a genuine issue, Marcussen explicitly affirmed to the Court that these affidavits would resolve her FOIA action and clear the way for the Court to dismiss this case. See id.

In her Motion to Show Cause, Marcussen argues that the Defendants have "provided

-23-

affidavits of persons with no connection to the requested records."  Motion to Show Cause at 1-2. Marcussen fails to suggest, however, precisely who are the officials that have a "connection" to the records beyond those who have already submitted affidavits.  At most, she asserts, in a letter to counsel for the Defendants, that "[t]he Western Regional Office of BIA should have copies of the JPAs between the Navajo Nation and New Mexico for Title IV-D and Title IV-E for the years 1992-1996.  This means the records are not in Gallup at the Area Office which is below the Regional Office."  Letter from Lana E. Marcussen to Cynthia L. Weisman, Assistant United States Attorney, at 2 (October 3, 2005).  Yet BIA has submitted an affidavit from Roanhorse, the Regional Social Worker for the Western Region in Phoenix, Arizona, that denies that BIA possesses the requested documents.  See Roanhorse Decl. ¶ 3, at 1-2.

Without a clearer indication of why she believes the BIA is withholding documents, when the BIA has repeatedly stated that it does not have the requested documents, the Court simply cannot allow this case to continue ad infinitum until some distant point in the future when Marcussen may finally express satisfaction.  Based on their representations, the Defendants have made a reasonable search of their records and have found nothing further that is responsive to Marcussen's request. Marcussen has produced nothing that indicates the Defendants are either incorrect or are trying to frustrate her in bad faith.  The Court, therefore, will grant the Defendants summary judgment because there is no genuine issue that the Defendants are not withholding documents requested by Marcussen.

## II.    THE COURT WILL DENY MARCUSSEN'S MOTION TO SHOW CAUSE.

The Court will deny Marcussen's motion to hold Secretary Norton in contempt of court or, in the alternative, to order Secretary Norton to require the BIA to produce the administrative record,

because her motion is moot in light of the Court's ruling on the Defendants' Motion to Dismiss.[3]
Marcussen bases her motion on the Defendants' supposed non-compliance with the FOIA. The Court
has ruled, however, that the Defendants complied with the FOIA by conducting a reasonable search
for the documents and failing to find any responsive documents. In light of this ruling, there is no
non-compliance by the Defendants that warrants taking such punitive action against the Defendants.

Marcussen also requested leave to file an amended Complaint to allow her to allege various
civil rights causes of action. Marcussen's proposed new causes of action appear to be the civil rights
violations that Marcussen has referenced throughout this matter; as Marcussen has represented many
times, her request for documents under FOIA is intended to produce documents that will aid her in
a later action alleging violations of her constitutional rights. See, e.g., Transcript of Hearing at 4:14-
5:1 (taken August 26, 2005).

The Court believes this request is also moot following the Court's ruling on the Defendants'
Motion to Dismiss. The Defendants have carried their burden of showing that they have not
improperly withheld documents from Marcussen. Because the Defendants have turned over to
Marcussen all of the documents they possess that are responsive to her FOIA request, her claim for
relief under FOIA is moot. See Anderson v. United States Dep't of Health & Human Servs., 3 F.3d
at 1384. Without jurisdiction to proceed any further in this matter, the Court is without power to
grant Marcussen leave to amend her Complaint.

Even if the request to amend were not already moot, and the Court had jurisdiction to add
this new claim, the Court would deny her request because of undue delay. Marcussen explains that

---

[3] The Defendants have not yet responded to Marcussen's motion. The Court does not believe
that the Defendants will be prejudiced by the Court's ruling in advance of a possible response, given
the Court's resolution of Marcussen's motion and the law on this subject.

she is requesting leave to amend, nearly a year after she filed her original Complaint, because she only

now has enough information to make specific allegations of constitutional violations.  See Motion to

Show Cause at 4.  Marcussen does not, however, explain what these new "facts" are, nor why the

voluminous factual section of her Complaint, totaling 35 pages and over 250 paragraphs, was

insufficient to allege constitutional violations.  She also does not shed light on why it has taken her

a year to discover these facts; indeed, Marcussen has had nearly a decade, the amount of time since

she lost custody of her child, to accumulate the facts necessary to allege a deprivation of her

constitutional rights.

In fact, Marcussen has indicated throughout this case her knowledge of her possible civil

rights claims, yet has chosen to forego them in this matter.  In her Response, Marcussen describes

the factual basis of her Complaint as "the complete denial of due process of law in the family court

of the Second Judicial District of New Mexico that resulted in orders on custody and child support

that have caused her serious harm."  Response at 1.  Yet in that same pleading, she explains that "this

[C]omplaint is only a FOIA/APA and declaratory judgment claim at this time.  She alleges civil rights

harm throughout the [C]omplaint but reserves all claims pending production of the FOIA request and

the administrative record."  Id. at 3.  She also states that "[t]his case will only produce documents

and possibly an administrative record."  Id. at 15.  At the hearings, she expressly reaffirmed that this

case is only a FOIA action, even though she was aware of a "larger civil rights question."  Transcript

of Hearing at 3:19-23 (taken May 24, 2005); Transcript of Hearing at 4:14-19 (taken August 26,

2005).  Indeed, at the August 26 hearing, Marcussen expressed a willingness to allow this case to be

dismissed based on the affidavits that have been filed, and to file her civil rights claims in a new

lawsuit.  See Transcript of Hearing at 4:14-5:1, 9:3-6 (taken August 26, 2005).

-26-

At every step along this case's windy path, Marcussen has evinced knowledge of her civil rights claims.  Instead of pursuing them in this action, she deliberately chose to set them aside for another day.  Given this calculated decision, and the fact that Marcussen provides no insight into the epiphany that has led her to ask for leave to amend, the Court would deny her request for leave to amend if it had jurisdiction.  The Court is uncomfortable, in fairness to the Defendants, with a plaintiff pursuing a case for one year for one purpose and then, when it is almost over, trying to convert it with an amendment into an entirely different case.

## III.   THE COURT WILL DENY THE DEFENDANTS' MOTION TO DIRECT MARCUSSEN NOT TO COMMUNICATE WITH REPRESENTED PARTIES.

The Defendants move the Court to direct Marcussen not to communicate with represented parties because she emailed James Cason, the Associate Deputy Secretary of the Interior, directly on October 17, 2005, about this case.  See Motion to Direct Plaintiff Not to Communicate at 1.  This motion, like Marcussen's Motion to Show Cause, is moot following the Court's ruling on the Defendants' Motion to Dismiss.  Because Marcussen's FOIA claim is moot, the Court has no jurisdiction to grant the Defendants their requested relief.  The Court will, therefore, deny the Defendants' Motion to Direct Marcussen Not to Communicate as moot.

**IT IS ORDERED** that the Defendants' Motion to Dismiss Filed in Lieu of an Answer by Federal Defendants HHS and DOI is granted.  The Defendants' Motion for Court to Direct Plaintiff Not to Communicate with Represented Parties is denied as moot.  The Plaintiff Lana E. Marcussen's Motion and Memorandum for Order to Show Cause or in the Alternative Require the Production of the Administrative Record is denied as moot.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Lana E. Marcussen
Phoenix, Arizona

       *Plaintiff pro se*

David C. Iglesias
  United States Attorney
Cynthia L. Weisman
  Assistant United States Attorney
Albuquerque, New Mexico

       *Attorney for the Defendants*